FILED IN CLERK'S OFFICE

JUL 24 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**ORIGINAL**

| | |
|---|---|
| CAR TRANSPORTATION BROKERAGE COMPANY, INC.,<br><br>    **Plaintiff,**<br><br>v.<br><br>BLUE BIRD BODY COMPANY and JOHN BLEAKLEY R.V. CENTER, INC. d/b/a JOHN BLEAKLEY MOTOR HOMES,<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE

NO. **1:06-cv-1728**

**TCB**

## COMPLAINT

Now Comes C.A.R. Transportation Brokerage Company, Inc. and files this

Complaint against Defendants Blue Bird Body Company and John Bleakley R.V.

Center, Inc. d/b/a John Bleakley Motor Homes showing this Court as follows:

### Parties, Jurisdiction and Venue

1.

C.A.R. Transportation Brokerage Company, Inc. ("CAR") is a corporation

organized under the laws of the State of Arkansas, with its principal place of

business in Springdale, Washington County, Arkansas.

2.

Blue Bird Body Company ("Blue Bird") is a Georgia corporation with its principal place of business in Fort Valley, Georgia. Blue Bird can be served through its registered agent, Charles Jeffrey Liipfert, 202 Central Ave., Fort Valley, Georgia 31030.

3.

John Bleakley R.V. Center, Inc. d/b/a John Bleakley Motor Homes ("Bleakley") is a Georgia corporation with its principal place of business in Douglasville, Georgia. Bleakley can be served through its registered agent, John Bleakley, 6200 Fairburn Rd., Douglasville, Georgia 30134.

4.

This Court has original jurisdiction over the above-styled action under 28 U.S.C. § 1332, because it is a civil action between a citizen of Arkansas and citizens of Georgia and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.

This Court has personal jurisdiction over the Defendants and, pursuant to 28 U.S.C. § 1391, the Northern District of Georgia, Atlanta Division, is the appropriate venue for this action.

## **Factual Allegations**

6.

Blue Bird is in the business of designing, manufacturing, distributing and selling motor coaches to retailers for re-sale as new motor coaches to the general public.

7.

Bleakley is in the business of selling motor coaches designed, manufactured, distributed and sold by Blue Bird, as well as other motor coach manufacturers, to the general public.

8.

On December 31, 2004, CAR, through its President and agent Clifford Riggins ("Riggins"), entered into negotiations with Bleakley to purchase a 2005 Wanderlodge Motor Coach, Model 450, VIN 1BBCRBG885W100254 ("the Motor Coach") designed, manufactured and distributed by Blue Bird.

9.

During sales negotiations, Bleakley represented that the vehicle was a new Motor Coach, had a stainless steel exterior, and was without any material defects.

10.

In addition, the written warranty provided by Blue Bird for the Motor Coach ("the Blue Bird Warranty"), expressly provided that the Motor Coach would be free from defects in material and workmanship under normal use and service.

11.

A true and correct copy of the Blue Bird Warranty is attached hereto as Exhibit "A".

12.

During the negotiation process, both Blue Bird and Bleakley were aware that the Motor Coach had previously suffered from significant electrical problems. However, neither Blue Bird nor Bleakley disclosed this information to CAR at any time during the negotiation process.

13.

During the negotiation process, Bleakley was aware that the Motor Coach did not have a stainless steel exterior, and failed to provide that information to CAR.

14.

On December 31st, 2004, relying on the representations made by Blue Bird, through the Blue Bird Warranty, and by Bleakley, CAR purchased the Motor Coach for the purchase price of $650,000.00.

15.

A true and correct copy of the Bill of Sale for the Motor Coach is attached hereto as Exhibit "B".

16.

On January 1, 2005, only one day post-purchase, CAR began to experience mechanical and electrical difficulties with the Motor Coach.  Specifically, after only fifty miles of driving, the following problems occurred, resulting in return of the vehicle to Bleakley to cure the defects:

   (a)  Non-functional heater
   (b)  Non-functional low-beam lights
   (c)  Non-functional inverter; basically, all A/C electricity non-functional
   (d)  Generator failure
   (e)  Power seat failure
   (f)  Awning failure
   (g)  Step failure

17.

On January 3, 2005, Bleakley presented the Motor Coach to CAR and stated that the Motor Coach was fully repaired.  That very same day, however, CAR was forced to return the Motor Coach to Bleakley to cure the following defects:

     (a)    Power seat failure
     (b)    Inverter failure
     (c)    Microwave and power in galley area failure
     (d)    Gauges jumping up and down
     (e)    Generator failure
     (f)    Step failure
     (g)    Electric shades failure
     (h)    Hot water heater failure
     (i)    Television failure
     (j)    Electric switch failure
     (k)    Sleeper-sofa failure
     (l)    Step well slide cover failure
     (m)   Automatic door lock failure

18.

On January 3, 2005, Bleakley reported that the defects in the Motor Coach were cured.  Riggins test-drove the Motor Coach, discovering that the step well cover would not work.  The Motor Coach was returned to cure the defect. Bleakley described the problem as a short in the electrical module.

19.

On January 4, 2005, Bleakley presented the Motor Coach to Riggins and stated that the coach was fully repaired.  Riggins departed the Bleakley dealership

in Douglasville, Georgia for the return trip to Arkansas.  During the trip, following

the four days of repairs at the Bleakley dealership, the following defects were

discovered:

      (a)    Generator failure
      (b)    High-beam headlights failure
      (c)    Inverter failure
      (d)    Hot water heater failure
      (e)    Heater failure
      (f)    Awning on passenger side failure

Riggins phoned the Blue Bird factory to schedule repair of the vehicle.  Blue Bird

informed him that the first available repair date was March 17, 2005.

20.

On January 27, 2005, Riggins first observed cracks on the exterior of the

Motor Coach.

21.

On January 31, 2005, Riggins began the trip to the Blue Bird factory when

the following additional defects occurred in transit:

      (a)    Locking system failure
      (b)    Air Dryer failure
      (c)    Alternator failure
      (d)    Headlight failure
      (e)    Heater failure

22.

On February 2, 2005, Riggins returned the Motor Coach to the factory to

cure the defects.

23.

On February 3, 2005, Riggins left the Motor Coach at the factory for repair

of the following:

      (a)    Inverter failure
      (b)    Generator failure
      (c)    High-beam light failure
      (d)    Hot water heater failure
      (e)    Heater failure
      (f)    Awning failure
      (g)    Microwave failure
      (h)    Indented portions on front of the coach
      (i)    Windshield wipers indented
      (j)    Failure of light switches
      (k)    Shade failure
      (l)    Paint cracking
      (m)   Piece of fiberglass body having fallen off
      (n)    Passenger side lock failure
      (o)    Air dryer failure
      (p)    Alternator failure
      (q)    Total headlight failure

24.

Riggins returned to the factory on February 11, 2005 to pick up the Motor

Coach, reputed to be repaired.  He remained on site to test the vehicle.  On

8

February 14, 2005, the Motor Coach was again returned to the factory to cure the

following defects:

(a)   Inverter failure
(b)   Shade failure
(c)   Computer short-out
(d)   Surge protector burnout
(e)   Generator failure

25.

On February 15, 2005, the Motor Coach was again reputed to be repaired.

On February 16, 2005, CAR returned the Motor Coach to the factory to cure the

following defects:

(a)   Generator failure
(b)   Electric Step failure
(c)   Shade failure
(d)   Electric Plug failure
(e)   Surge Protector burnout

26.

The Motor Coach was presented to Riggins, reputed to be fully repaired, on

February 18, 2005, but for reference to a problem with the inverter, which was to

be ordered.  Riggins departed the factory on February 18, 2005.

27.

After February 18, but prior to March 8, 2005, the following defects

occurred with the Motor Coach:

    (a)     Generator failure
    (b)     Electrical failure
    (c)     Passenger seat belt failure
    (d)     Side window shade failure
    (e)     Shower leak
    (f)     Thermostat failure
    (g)     Sofa-bed failure
    (h)     Gauges jumping

28.

On March 22, 2005, CAR revoked its acceptance of the Motor Coach by demanding a new merchantable Motor Coach of like value without the defects associated with the Motor Coach in question, or, in the alternative, a refund of the purchase price for the return of the Motor Coach.

29.

Blue Bird and Bleakley rejected CAR's demand for revocation.

30.

CAR has made reasonable efforts to allow both Blue Bird and Bleakley to repair the substantial defects in the Motor Coach.

31.

Neither Blue Bird nor Bleakley has been able to cure those defects within a reasonable time, and the Motor Coach remains defective and neither merchantable nor fit for its intended use as a Motor Coach.

32.

Both Blue Bird and Bleakley have breached their obligations to CAR, both express and implied, through their sale of a defective Motor Coach to CAR, and through their inability to cure those repeated and numerous defects within a reasonable time.

33.

As of the date of filing this Complaint, the Motor Coach is located in a storage facility in Arkansas, disabled because of electrical drain on the battery caused by one or more of the defects described above.

## COUNT I
## REVOCATION OF ACCEPTANCE (BLEAKLEY)

34.

Plaintiff incorporates paragraphs 1 through 33 as if fully set forth herein.

35.

The Motor Coach purchased by CAR was in not in conformity with the expectations of the sales contract so as to substantially impair the value to CAR.

36.

CAR's purchase of the vehicle was reasonably induced by Bleakley's assurance that the Motor Coach would perform in accordance with its purpose as a recreational vehicle.

37.

Once CAR identified the defects in the Motor Coach, CAR immediately informed Bleakley of the defects.

38.

Bleakley assured CAR that it would cure the defects.

39.

As a result of the defects in the Motor Coach and Bleakley's inability to repair the Motor Coach, CAR justifiably lost confidence in the Motor Coach's reliability and safety.

40.

The value of the Motor Coach has been substantially impaired to CAR.

41.

The defects were not and could not have been reasonably discovered by CAR prior to purchase of the Motor Coach.

42.

After Bleakley made numerous attempts to repair the defects without success, CAR revoked acceptance of the Motor Coach by letter.

43.

CAR's revocation of the Motor Coach occurred within a reasonable time after CAR realized that neither Bleakley nor Blue Bird could cure the defects.

44.

At the time of revocation, the Motor Coach was in substantially the same condition as it was at the time of delivery except for damage caused by its own defects and ordinary wear and tear.

45.

Bleakley refused CAR's demand for revocation and the corresponding remedies to which CAR is entitled under law.

46.

CAR has been and will continue to be financially damaged due to Bleakley's breaches.

47.

Specifically, in addition to the value of the Motor Coach being impaired due to its defects, Plaintiff suffered aggravation and inconvenience by being forced to use and operate a Motor Coach fraught with defects.  CAR was also without the beneficial use of the Motor Coach during the time it was tendered for repair and/or unable to be operated to its fullest extent due to its defects.

13

48.

Since revocation of the Motor Coach, CAR has held the goods in a storage facility in Arkansas.

## COUNT II
## BREACH OF EXPRESS WARRANTY (BLUE BIRD)

49.

Plaintiff incorporates Paragraphs 1 through 48 as if fully set forth herein.

50.

CAR is entitled by the terms of the Blue Bird Warranty provided to it by Blue Bird through its authorized dealer to enforce the obligations of said warranty.

51.

Defendant Blue Bird, through the Blue Bird Warranty, expressly warranted the Motor Coach to be free from defects in material and workmanship under normal use and service.

52.

The Blue Bird Warranty was the basis of the bargain with respect to the contract for sale executed and entered into by CAR.

53.

The purchase of the Motor Coach by CAR was induced by the Blue Bird Warranty, upon which CAR relied.

54.

CAR has honored its obligations under the Blue Bird Warranty.

55.

Blue Bird breached its obligations under the Blue Bird Warranty, by failing to replace or repair the Motor Coach's defects after being afforded a reasonable number of attempts and a reasonable opportunity to cure.

56.

Blue Bird breached these express warranties by providing CAR with a Motor Coach that (a) was not of good material or workmanship; (b) was not free from material defects; and (c) did not perform under normal use and service.

57.

As a direct and proximate result of Blue Bird's failure to comply with the Blue Bird Warranty, Plaintiff has suffered damages, including, but not limited to (a) loss of use; (b) diminished value; and (c) incidental and consequential damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY (BLEAKLEY)

58.

Plaintiff incorporates Paragraphs 1 through 57 as if fully set forth herein.

59.

The Motor Coach purchased by Plaintiff is subject to an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7), and O.C.G.A. § 11-2-314(2)(c).

60.

Bleakley contracts to sell goods.  Bleakley sells motor coaches to purchasers.  Bleakley is a merchant with respect to the goods of the kind sold to CAR.

61.

As a matter of law, the parties' contract for sale implies that the Motor Coach is merchantable because Bleakley is a merchant with respect to such goods.

62.

At the time of Bleakley's sale of the Motor Coach to CAR, Bleakley was fully aware of the purpose for which CAR was purchasing the Motor Coach.

63.

Bleakley impliedly warranted that the Motor Coach sold to CAR was of good and merchantable quality.

64.

The implied warranty of merchantability was breached by Bleakley in that the Motor Coach was not merchantable and was not fit to be driven as a

recreational vehicle.  Indeed, the Motor Coach experienced mechanical and electrical problems the very first time it was used.

65.

The Motor Coach has not provided dependable transportation as a recreational vehicle, and it has not been trouble-free.

66.

The Motor Coach would not pass without objection in the trade under the contract description and does not conform to the promises or affirmations of fact made by Bleakley.

67.

As a result of the breach of implied warranty by Bleakley, CAR is without the reasonable value of the Motor Coach.

68.

As a proximate and direct result of the breach of implied warranty of merchantability by Bleakley, CAR has suffered and continues to suffer damages, including those specifically identified in the foregoing paragraphs.

**COUNT IV**
**FRAUD (BLEAKLEY)**

69.

Plaintiff incorporates Paragraphs 1 through 68 as if fully set forth herein.

17

70.

Defendant Bleakley failed to disclose the Motor Coach's electrical defects.

71.

Defendant Bleakley knew its failure to disclose the defects was untruthful and damaging.

72.

Defendant Bleakley intentionally and deceitfully withheld its knowledge of the electrical defects from CAR to induce CAR to purchase the Motor Coach.

73.

CAR relied on Bleakley's silence as to the Motor Coach's condition and decided to purchase the Motor Coach.

74.

CAR sustained damage as the proximate result of Bleakley's non-disclosure of the Motor Coach's latent defects.

## COUNT V
## NEGLIGENT MISREPRESENTATION (BLEAKLEY)

75.

CAR incorporates Paragraphs 1 through 74 as if fully set forth herein.

76.

Defendant Bleakley negligently failed to disclose the Motor Coach's electrical defects.

77.

Defendant Bleakley's negligence induced CAR to purchase the Motor Coach.

78.

CAR relied on Bleakley's negligent silence as to the Motor Coach's condition and decided to purchase the Motor Coach.

79.

CAR sustained damage as the proximate result of Bleakley's negligent non-disclosure of the Motor Coach's latent defects.

## COUNT VI
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## (BLEAKLEY)

80.

CAR incorporates Paragraph 1 through 79 as if fully set forth herein.

81.

Bleakley attempted to conceal the condition of the Motor Coach.

82.

Bleakley attempted to conceal the condition of the Motor Coach by failing to report the massive electrical problems associated with the Motor Coach.

83.

The electrical defects in the Motor Coach were latent and were not detectable with the naked eye.

84.

CAR exercised ordinary care in the purchase of the Motor Coach but was unable to detect the defects.

85.

CAR relied on Bleakley's silence regarding the defects and decided to purchase what it thought was a Motor Coach free from defects.

86.

CAR sustained damage as the proximate result of Bleakley failing to disclose the electrical defects in the Motor Coach.

## COUNT VII
## ATTORNEYS FEES (BLEAKLEY AND BLUE BIRD)

87.

CAR incorporates paragraphs 1 through 86 as if fully set forth herein.

88.

By refusing to compensate CAR for the damage it has suffered to its property, Bleakley and Blue Bird have acted in bad faith, have been stubbornly litigious and have caused CAR unnecessary trouble and expense.

89.

Accordingly, CAR is entitled, pursuant to O.C.G.A. § 13-6-11 to recover its attorney's fees and its expenses of litigation incurred in this action.

90.

CAR is also entitled to attorney's fees under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 because Bleakley and Blue Bird breached their warranties.

WHEREFORE, CAR demands a trial by jury on all claims and prays that the Court award it the following relief:

a)      That the Court enter judgment in favor of CAR against Defendants for revocation of acceptance;

b)      That the Court enter judgment in favor of CAR against Defendants for compensatory damages in an amount no less than $650,000.00;

c)      That the Court award Plaintiff the pre-judgment interest that has accrued since Plaintiff's revocation of acceptance, in the

amount of $60,957.53 and the pre-judgment interest that will

continue to accrue in the amount of $124.65 per day;

d)      That the Court enter judgment in favor of CAR against

Defendants for attorneys fees; and

e)      That the Court enter judgment in favor of CAR against

Defendants for costs.

Respectfully submitted this _24th_ day of July, 2006.

William V. Custer
Georgia Bar No. 202910
John C. Patton
Georgia Bar No. 567232
Ashley A. Palermo
Georgia Bar No. 559425
POWELL GOLDSTEIN LLP
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta GA 30309
(404) 572-6600

Attorneys for CAR TRANSPORTATION
BROKERAGE COMPANY, INC., Plaintiff

#1046668